IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.                                                     CIV 09-1049 JP/KBM
                                                     CR   04-0666 JP

TRAVIS DENNY,

        Defendant-Movant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

      Travis Denny is represented by the Federal Public Defender in this § 2255 habeas action.[1] This case involves two issues – (1) whether the § 2255 petition is timely and (2) whether trial counsel's failure to file a notice of appeal constitutes ineffective assistance of counsel under *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). I held an evidentiary hearing on March 22, 2010 which has been transcribed. *See Docs. 19, 21* (hereinafter *"Evidentiary Hearing Transcript"*). Both parties submitted post-hearing briefs, and briefing is complete. *See Docs. 23, 24, 27.* The

---

[1] Unless otherwise noted, citations to "*Doc.*" are the documents filed in this civil action. Although the federal form for initiating a § 2255 action is captioned "motion," as is the common practice both in this Court and the Tenth Circuit, I refer to the document as a "petition." *See e.g., United States v. Shipp*, 589 F.3d 1084, 1086 (10th Cir. 2009) ("appeals the district court's denial of his 28 U.S.C. § 2255 habeas petition"); *United States v. Jose Garcia-Cardenas*, CIV 08-0382 LH/KBM (*Doc. 7* at 2) ("Defendant raises three claims in his § 2255 petition").

briefs are particularly thorough, which the Court appreciates. I incorporate them herein by reference for the background, positions of both parties, and the general applicable law. To that I add the discussion below, which summarizes the basis for my recommendation.

## I. The Facts Support A *Flores-Ortega* Violation

I agree with Defendant that, in light of the United States' exclusive focus on timeliness, the ineffectiveness issue appears to be conceded. *See Doc. 27* at 1. The testimony of both Defendant and trial counsel Joe Romero support a finding of "ineffectiveness" for failing to file a notice of appeal.

Immediately after sentencing, both were aware of the others' position concerning an appeal. Defendant expressly told Mr. Romero to file an appeal. Mr. Romero did not think that would be wise because under the law at that time, the Tenth Circuit could have found that Defendant should have received an even longer sentence than the 240 months of incarceration that Judge Parker imposed. The testimony reveals that the aftermath of the lengthy sentencing hearing was rushed and emotionally-charged permitting only a few minutes of attorney/client discussion. And, Mr. Romero could not recall precisely which of them spoke last or whether they definitively resolved the issue of an appeal. *See e.g., Evidentiary Hearing Transcript* at 9, 11-13, 48-51, 59; *Doc. 23* at 18-20, 24-25. It is clear, however, that Defendant left the courthouse believing an appeal would be filed, and Mr. Romero left the courthouse believing he had dissuaded his client from pursuing an appeal.

Although this failure to file an appeal undoubtedly was a misunderstanding, certain circumstances should have compelled Mr. Romero to clarify Defendant's desires with regards to an appeal. Denny was originally represented by appointed counsel who had obtained plea offers

from the government for significantly less sentences of incarceration than was ultimately imposed. However, the plea offers required that Petitioner waive his appeal rights. Denny and his family felt strongly that they had a strong suppression issue, but his appointed counsel advised against filing a motion to suppress. Therefore, Mr. Romero was retained to litigate the suppression issue, did so and was successful at the trial level.

The government, however, filed an interlocutory appeal and, after 15 months, the Tenth Circuit issued a decision reversing the trial court's grant of the motion to suppress and remanding. Mr. Romero unsuccessfully sought *en banc* review at the circuit and *certiorari* by the Supreme Court. All told then, that appeal process took 21 months.

Back at the trial court level, the government was unwilling to renew past plea offers and expressed its intent to push for a sentence of at least 20 years of incarceration. Thus, Denny chose to plead guilty without any agreement so that he could preserve his right to argue for a downward departure or variance and preserve his right to appeal the sentence imposed. Mr. Romero sought and received several continuances of the sentencing hearing based on several pending cases in the Supreme Court, rulings on which could dramatically expand a sentencing judge's discretion at sentencing. *See* Docs. 110, 114, 117, 120 *(in the criminal case)*.

At the sentencing hearing held September 26, 2007, Judge Parker stated that he felt Tenth Circuit precedent "constrained" his ability to sentence to significantly vary from the bottom end of the applicable guideline range. Indeed, in *United States v. Garcia-Lara*, 499 F.3d 1133 (10th Cir. 2007), the Tenth Circuit reversed a sentence of 140 months which varied well below the 262 months bottom of the applicable guideline range. I note that *Garcia-Lara* was reversed and remanded in light of *Gall v. United States*, 552 U.S. __ (2007), entered less than three months after Denny pleaded guilty. *See Garcia-Lara v. United States*, 553 U.S. 1016 (2008).

Given the above observations, I find it was unreasonable for Mr. Romero to believe that Denny no longer sought to pursue an appeal. The testimony adequately supports a finding that Mr. Romero disregarded a direct request to file a notice of appeal. *See Doc. 23* at 18-25 (and authorities cited therein).[2] This constitutes "ineffectiveness" under *Flores-Ortega* and would warrant relief in the form of a delayed appeal, without a specific showing of any "prejudice." *E.g., United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007).[3]

In summary, if the § 2255 petition is found to be ***timely***, Petitioner is entitled to the relief vacating and immediately reentering the judgment of conviction and sentence, so that he may take a direct appeal to the Tenth Circuit. *E.g., United States v. Snitz*, 342 F.3d 1154, 1156, 1159 (10th Cir. 2003) ("Defendant is entitled to a direct appeal of his conviction. To effectuate this right, we direct the district court to vacate and reenter its judgment of conviction and sentence to allow defendant to file a timely appeal.").

---

[2] *Compare Andrews v. Colorado*, 2010 WL 2113471 (10th Cir. 2010) (distinguishing situation where a defendant tells attorney to perfect an appeal but counsel fails to do so because "Andrews' trial counsel, after weighing the possibility of an appeal, concluded in her professional opinion that there were no legitimately appealable issues. In fact, Andrews' trial counsel testified at the [state hearing] that she believed it would have been unethical for her, as an officer of the court, to have filed an appeal in Andrews' case. In turn, Andrews' trial counsel informed Andrews, in no uncertain terms, that she would not be filing an appeal on his behalf. Consequently, Andrews, unlike the petitioner in *Rodriquez*, could not reasonably have been under the impression that trial counsel was going to file an appeal on his behalf. And, relatedly, there was no disregard by trial counsel in this case, as there was in *Rodriquez*, of 'specific instructions from the defendant to file a notice of appeal'") (citing *Florez-Ortega*, 528 U.S. at 477 and *Rodriquez v. United States*, 395 U.S. 327, 328 (1969)).

[3] Thus, I need not address whether this case also involves a "failure to consult," though I note Defendant asserts he was prejudiced by this failure because he does have a meritorious claim for appeal. *Doc. 27* at 1 ("Mr. Denny's sentence is very likely higher than it would have been had his sentencing complied with *Gall v. United States*, 552 U.S. 38 (2007)."); *see also Doc. 23* at 20-25 (and authorities cited therein); *Flores-Ortega*, 528 U.S. at 484-86 (failure to consult situation requires showing of actual prejudice – "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed" – and that "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination").

## II.  The Prison Mailbox Rule

The § 2255 petition contains a certificate that states the document was "delivered to prison authorities for forwarding to the court [under] *Houston v. Lack*" on "October 20, 2009." *Doc. 1* at 8.  The Court filed the petition on November 2, 2009.  In calculating whether the petition was timely, the United States uses the filing date.  Defendant asserts that the October mailing date should be used and the "prison mailbox rule" applies.  *See Doc. 27* at 11, n.1

The "prison mailbox rule," announced by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 276 (1988), applies to a prisoner's § 2255 petition.  *See e.g., United States v. Gray*, 182 F.3d 762, 765 n. 4 (10th Cir. 1999) (noting rule has been extended beyond the notice of appeal context in which it arose, to "a variety of other situations") (citing *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989)).  The rule provides that a prisoner submission "will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents."  *Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005).

There are two ways to invoke the rule.  One is by using a prison's mail system that complies with *Houston.*  Alternatively, "if a prison lacks a legal mail system, a prisoner must submit a declaration or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid."  *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir.), *cert. denied*, 543 U.S. 1005  (2004); *see also Philpot*, 420 F.3d at 1165 (noting that the prison system must log the mail and that a "regular prison mail" system will not suffice) (citing *United States v. Leonard*, 937 F.2d 494, 495 (10th Cir. 1991), which refused to apply the rule where an inmate used regular prison mail and *Gray*, 182 F.3d at 765,

which explained that a "legal mail system" automatically logs all legal mail "through relatively simple, straightforward procedures"). Where, as here, "the only evidence of the date appellant gave his motion to prison authorities for mailing is his certificate of service" it will be considered timely if the certificate is "in compliance with 28 U.S.C. § 1746." *Gray*, 182 F.3d at 766. But the certificate here is not notarized or "made under penalty of perjury" as required by 28 U.S.C. § 1746.

I recognize that there are at least two other Tenth Circuit decisions that "liberally" apply the *Houston* rule and "deem" objections filed on the date they were "mailed." One of these decisions equates the date of "mailing" with the date the objections were signed. *See Marsh v. Soares*, 223 F.3d 1217, 1218 n. 1 (10th Cir. 2000) ("Although the petition was not actually file stamped until January 11, 2000, it was signed on December 29, 1999. Liberal application of the mailbox rule . . . causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed."), *cert. denied*, 531 U.S. 1194 (2001).[4] I need not resolve which line of cases applies because, as demonstrated below, the petition is untimely under either date.

---

[4] *See also White v. Parker*, 141 Fed. App'x 737, 738 n.1 (10th Cir. 2005) ("The certificate of service, attached to Mr. White's objection, suggests that he signed and relinquished control of the document on December 22, 2004. The objection was mailed on December 29, 2004 . . . We consider the objection to be timely filed under the prisoner mailbox rule. *See Dunn* . . . deeming the mailing date to be the filing date").

The Northern District of Oklahoma noted that unpublished Tenth Circuit authority adheres to *Price* and *Ceballos-Martinez* requirement that a prisoner must use the legal mail system or, if none exists, then submit a complying statement. *See United States v. Mack*, 2009 WL 3763728, at *2 & n. 1 (N.D. Okla. 2009) ("If a prisoner does not document usage of the prison's legal mail system or submit a notarized declaration stating the date on which he deposited the motion to be mailed, he cannot avail himself of the prisoner mailbox rule.") (citing as persuasive *Fogle v. Estep*, 220 Fed. App'x 814, 816 (10th Cir. 2007) and *United States v. Fredette*, 191 Fed. App'x 711, 714 (10th Cir. 2006)). The decision distinguished *Marsh* because the prisoner did not mail the document on the date it was signed. *Id.* at *3, n.4.

### III.  The § 2255 Petition Is Untimely

Denny initially assumed that Mr. Romero had followed his directive to file a notice of appeal, and he had no apparent reason to think to the contrary.  After some time went by without any word from his attorney,  Defendant decided to call Mr. Romero's office to inquire about the status of his appeal.  He discovered that Mr. Romero had been called up in late 2007 from his reserve duty and was overseas on a one-year active duty deployment with the Army National Guard at Guantanamo Bay.  Mr. Romero had wound down his private practice, and his sole employee was a paralegal who worked 30 hours a week with not set schedule.

In repeated calls to the office seeking to communicate with Mr. Romero, Petitioner found the office staff to be unhelpful and somewhat dismissive of his concerns. Mr. Romero conceded at the hearing that "he didn't have the most reliable system in the world while [he]  was gone." *Evidentiary Hearing Transcript* at 83.  Having received no response to his continuing inquiries, Defendant resorted to calling the Court  Clerk's Office on September 28, 2008 and was informed that the court file did not contain a notice of appeal.  It was not until January 2009 that Defendant spoke with Mr. Romero who had just returned from Cuba.  It was only then that he heard from his lawyer that no notice of appeal had been filed and that Denny might want to consult an attorney to seek postconviction relief.

Defendant argues that his petition was timely for two alternative reasons – either (1) under 28 U.S.C. § 2255(f)(4) the one-year statute of limitations did not begin to run until he personally spoke with counsel in January 2009, or (2) the limitations period began to run on September 28, 2008 when he spoke with the Court clerk and that it was equitably tolled thereafter. I find both arguments unavailing and  will recommend that this action be dismissed as untimely.

### A.  *Actual Notice Triggered The Statute of Limitations*

Under § 2255(f)(4) the statute of limitations begins to run on "the date on which the facts supporting [his ineffectiveness claim] *could have been discovered* though the exercise of due diligence."  *Doc. 27* at 5-6 (emphasis added); *see also Doc. 23* at 26-32.  Defendant's testimony could not have been more clear and unequivocal that, at least as of September 2008, he actually knew counsel had not filed an appeal.

> I went and called the court clerk and asked about my appeal.  And . . . the lady told me that it was never filed . . .
>
> * * * * *
>
> Q:  Do you recall specifically what information the court clerk said to you and how it was said?
> A:  She just said that no appeal was filed on my behalf.

*Evidentiary Hearing Transcript* at 19, 21.  In light of this unequivocal testimony, I cannot agree with the suggestion that Defendant was confused by what the clerk told him, *see Doc. 23* at 31, or that the "only way to learn whether Mr. Romero had in fact appealed was to communicate with Mr. Romero [which] would not be possible until Mr. Romero completed his military service," *id.* at 32.

Defendant's habeas counsel argues that because Defendant was generally aware appeals can take years, he had no reason to believe what the clerk told him until he confirmed the lack of an appeal in person with his trial attorney.  *See id.* at 31-32.  Again, Defendant's testimony is unequivocal.  Initially, he

> was just being patient, because I thought maybe it took a while . . . when we did the suppression of evidence and they appealed it, it took a long time.  So, I thought maybe it just took a while.  But probably like a year after I was there, I started saying I should have heard something by now.  So, that's when . . .  I went and called the court clerk and asked about my appeal.


*Evidentiary Hearing Transcript* at 19.  Indeed, it was the clerk's information that spurred him to make efforts to file an appeal himself – "when the lady told me that it was never filed, then I went to the law library and started trying to find out how to file it or how do I get it filed or whatever."  *Id.*  Furthermore, since here there was no written confirmation by Mr. Romero that the appeal had been filed and no suggestion in the testimony that they discussed how long the direct appeal would take, the cases where a defendant delayed acting based on counsel's estimates of the length of the appeal are inapposite.  *See Doc. 23* at 27-29; *Doc. 27* at 9.

Here Defendant's actual discovery date (September 28, 2008, misidentified by Denny in his *pro se* motion as September 28, 2009 ) is before the date habeas counsel now argues would have been reasonable for him to have discovered it (January 2009).  Defendant contends that the date of his actual discovery can either be ignored or should not be held against him because the statute uses the phrase "could have been discovered" and because "diligence" does not require a prisoner to go to extraordinary lengths to check on his counsel's actions.  In support, he principally relies on *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002) and *United States v. Wims*, 225 F.3d 186, 190 (2nd Cir. 2000).  *See Doc. 23* at 29-32; *Doc. 27* at 7-11.

Neither cited case stands for this proposition.  Both opinions specifically state that they were not deciding that question : "we need not decide the question of how to apply § 2255(4) when a petitioner's ***actual discovery*** of the relevant facts ***precedes the date*** on which they would have been discovered through the exercise of ***due diligence.***"  *Aron*, 291 F.3d at 710, n.1  and *Wims*, 225 F.3d at 190, n.5 (emphasis added as to both).  I have done my own research and have not found any decision that ignores an actual date of discovery when that date has been ascertained and is clear.

Tenth Circuit precedent certainly suggests that the date of actual discovery will control

for § 2255(f)(4) purposes.  For example, it recently stated:

> Section 2255(f)(4) speaks to discovery of facts supporting a claim, not a failure to appreciate the legal significance of those facts. . . . Thus, this case is distinguishable from *United States v. Lopez*, 194 F. App'x 511, 513 (10th Cir. 2006), where we remanded for the district court to determine at what point the defendant should have discovered that his attorney did not file a § 2255 motion.  *See also United States v. Weathersby*, Nos. 98-20076-30 & 08-2081, 2008 WL 3884320, at *1 (D. Kan. Aug.18, 2008) *(once defendant learned that counsel failed to file a § 2255 motion, the limitation period under § 2255(f)(4) began running*).  It is also distinguishable from *Johnson v. United States*, 544 U.S. 295, 310, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005), where the Court held that § 2255(f)(4) applied to vacatur of a state conviction used to enhance a federal sentence, provided the defendant pursued vacatur diligently after the imposition of the federal sentence.

*United States v. Collins*, 2010 WL 438402, at *2 (10th Cir. 2010) (emphasis added).[5]

Accordingly, I reject the argument that any date later than September 28, 2008 triggered the statute of limitations under 28 U.S.C. § 2254(f)(4).  Using that date of actual knowledge as the trigger, the one-year period under § 2255(f)(4) expired on the "anniversary date" of September 28, 2009.  *E.g., United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003).  Thus, the

---

[5] *See also United States v. Sours*, 307 Fed. App'x 129, 131-32 (10th Cir. 2009) ("Section 2255 includes grounds for tolling until 'the date on which . . . could have been discovered through the exercise of due diligence.' . . . However, as the district court noted, **Mr. Sours admitted to learning that the escape charge had been dropped by April 2003.** . . . **Thus,** the statute of limitations period could only have been extended until April 2004, at the latest, on that basis.") (emphasis added); *United States v. Starr*, 275 Fed. App'x 788, 789  n.2 (10th Cir. 2008) (suit from this district; "Although Starr claims that he only 'recently' learned of this evidence, **he has not provided the exact date upon which he discovered this evidence,** nor attempted to explain why he could not have obtained this information from his family members or former counsel at an earlier date through diligent efforts.") (emphasis added); *United States v. Azubuike*, 267 Fed. App'x 731, 732-33 (10th Cir. 2008) ("Section 2255(f)(4) limitations period is expressly limited to cases where 'facts'- not law - are newly discovered.  **Mr. Azubuike has always known all of the facts that support his claim for ineffective assistance - namely, that his counsel did not believe there were meritorious issues to appeal, that his counsel advised that no appeal could therefore be taken, and that Mr. Azubuike believed this advice from his counsel.**  What Mr. Azubuike (allegedly) did not discover until July 2007 was the legal basis on which such actions by his counsel could be deemed to comprise ineffective assistance.") (emphasis added).

November 2009 petition was untimely absent equitable tolling.

### B. Equitable Tolling is not Available

"Equitable tolling is reserved for those rare occasions where circumstances beyond a person's control result in non-compliance with a filing deadline despite diligent efforts." *United States v. Mumpower*, 2010 WL 549318, at *1 (10th Cir. 2010) (citing *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) and *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "To be entitled to equitable tolling, a litigant generally must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *United State v. Martinez*, 303 Fed. App'x 590, 594 (10th Cir. 2008) (internal quotations to *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008), in turn quoting *Lawrence*, 549 U.S. at 335, 337 omitted). Defendant's arguments focus on five factors.

Defendant was housed in a federal Bureau of Prisons facility in Fairton, New Jersey, when he called the district clerk in September 2008 and discovered that Mr. Romero had not filed a notice of appeal. *See e.g., Doc. 23* at 14. Defendant testified as to his actions in response to the clerk's news as follows:

> I went back to the law library and I asked the guys – one of the guys – in there that could he help me. ***I told him that my attorney didn't file the appeal.***
>     And he said – he asked me some other stuff like, "Well did your attorney file this?"
>     And I was like, "I'm not sure."
>     He said, "Did he file a direct appeal?"
>     I said, "I don't know what that is." I wasn't sure if he filed it.
>     So, he said, "Before I can help you, you got to find out all the stuff that he filed."
>     So, then I went and I got all the stuff that I had, which was just my suppression of evidence hearing, the Tenth Circuit decision; and brung all of that stuff back and he was like, "You got to find out if he filed this; how far did he go on your appeal," and I didn't have all of that information at that time.

*Id.* at 21-22 (emphasis added). Defendant paid this inmate librarian, but because the librarian

also "represented" other inmates, Defendant often had to wait to speak with him. *Id.* at 22-23.

After many requests, Mr. Romero's staff finally responded and sent the requested materials to Denny's wife. She then downloaded them and sent them on to Defendant in July or August 2009. *Evidentiary Hearing Transcript* at 29-30. Defendant had no further contact with Mr. Romero after August 2009, and Denny testified as to the steps he next took for seeking postconviction relief:

> First, before I went -- before I did that with that guy in the law library, we contacted a couple of lawyers on this web site and a couple of lawyers sent me letters back, like habeas corpus lawyers. And when I asked, one of the lawyers sent me a letter and he said that I should seek representation in the circuit that my case was in, because it would be cheaper.
> So, when I discussed it with my wife, we really didn't have the money to pay like thousands of dollars for that.

*Evidentiary Hearing Transcript* at 31.

The first basis for equitable tolling Defendant asserts is "because [he] could not afford to hire an attorney, despite looking into that possibility . . . [he] fell into the clutches of an inmate librarian who insisted on [Defendant] producing more and more documents before he would help. . . . The librarian was not always available because [Defendant] had to wait his turn behind other inmates. . . . Consequently, it took time to get the librarian's advice and then more time to obtain the demanded documents." *Doc. 23* at 32-33 (citations to testimony at pages 22 and 28-31 of the *Evidentiary Hearing Transcript* omitted). His fourth basis is related and asserts that neither he nor the librarian understood the "urgency of filing the § 2255 petition as soon as possible in light of the statute of limitations." *Id.* at 34.

Yet, according to Defendant's testimony, he told the librarian in September or October of 2008 that no appeal had been filed. I find it immaterial whether the librarian failed to appreciate that fact from their conversation, or wanted verification but did not relay to Defendant how

easily he could do that with a copy of the docket sheet, or intentionally ignored what Defendant had told him in order to procure more hours of work.  "[I]t is well established that [Defendant's] ignorance of the law, even for an incarcerated *pro se* prisoner, generally does not excuse prompt filing."  *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (internal quotation marks omitted), *cert. denied*, 531 U.S. 1194 (2001).  And, "the fact that an inmate law clerk was assisting in drafting the state petition does not relieve [Defendant] from the personal responsibility of complying with the law."  *Id.*  "[A]lthough inmate had received assistance from fellow inmate, ***he could have filed the petition himself at any time.***"  *Id.* at 1221 (emphasis added and parenthetical to citation to *Henderson v. Johnson*, 1 F. Supp. 2d 650, 655 (N.D. Tex 1998) omitted).

As his second ground, Defendant relies on his placement in segregation for some four months, first from late November to late December 2008, and again from March 2009 to mid-June 2009.  *See Doc. 23* at 33; *Evidentiary Hearing Transcript* at 23, 28.  Defendant contends that because of these four months in segregation, "the prison . . . prevented [him] from working on his case [because he testified that he] had no access to his legal papers, the library or his assisting inmate. . . .  He was therefore unable to accumulate documents or make any progress towards filing the § 2255 [petition]."  *Doc. 23* at 33 (citations to *Evidentiary Hearing Transcript* at 22-23, 27, 37-39 omitted).  Yet Defendant was housed in a federal facility, and the Bureau of Prisons has promulgated 28 C.F.R. § 543.11(j), which states:

> With consideration of the needs of other inmates and the availability of staff and other resources, the Warden ***shall*** provide an inmate confined in disciplinary segregation or administrative detention a means of access to legal materials, along with an opportunity to prepare legal documents.  The Warden ***shall*** allow an inmate in segregation or detention a reasonable amount of personal legal materials.

(emphasis added).  The word "shall" indicates a mandatory duty.  *United States v. Gabaldon*, 522 F.3d 1121, 1125 (10th Cir. 2008).

Citing *Gabaldon*, Defendant argues that because he was in segregation, equitable tolling is warranted.  522 F.3d at 1124-27.  However, *Galbaldon* is distinguishable:  the inmate in *Gabaldon* was actively pursuing preparation of a § 2255 petition, was aware of the deadline, prison officials actually confiscated the petition from him right before the filing deadline, he made repeated demands of the return of his materials so he could timely file, and managed to file the action as quickly as he could after being released.  *See* 522 F.3d at 1123-24.  Here, nowhere in his *pro se* submissions or his testimony does Defendant assert that anything was confiscated, or that he even requested his legal materials or a § 2255 form while he was in prolonged segregation, or that he was not allowed to receive correspondence from his wife, who was the one working on obtaining documents for Petitioner.  Thus, "[u]nlike the situation in . . . *Gabaldon*, [Defendant] does not allege any affirmative action taken by prison officials which denied him access to legal documents despite timely requests," *Yang*, 525 F.3d at 930 n. 8.[6]

Defendant's third basis for equitable tolling is the length of time it took his wife to secure the documents the librarian said he needed.  *See Doc. 23* at 33.  Defendant's wife began making

---

[6] *See also Martinez*, 303 Fed. App'x at 594-96 ("Mr. Martinez has made no showing to either the district court or this Court that he requested any withheld materials from prison officials.  *Cf. Gabaldon*, . . .  Nor has Mr. Martinez averred that he requested an extension of time to file his motion . . . or otherwise attempted to timely file despite being deprived of access to the law library and unspecified legal materials, . . . Mr. Martinez has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims [citing order granting certificate of appealability in *Gabaldon*, which stated Mr. Gabaldon specifically] asserts the record confirms . . . that he struggled to obtain documents from his attorney, faced complications with receiving packages containing portions of those documents from his mother, and worked diligently on researching and drafting his § 2255 motion . . . Further, Mr. Martinez has not provided this Court with specific details regarding what restrictions actually were placed on his access to legal materials or how such restrictions hindered his ability to file his § 2255 motion.") (internal quotations and citations omitted).

periodic calls to Mr. Romero's office beginning in 2008. *Evidentiary Hearing Transcript* at 81. According to Defendant he did not receive those documents from her until July or August 2009, and the reason why the documents were so important was because they demonstrated to the librarian that no direct appeal had been filed. *See Evidentiary Hearing Transcript* at 29. But, there was no testimony from Defendant or his wife as to why they failed to ask the Court for the docket sheet. Moreover, Defendant had known since at least September 28, 2008 that no appeal had been filed. It is his lack of diligence, not his wife's, that ultimately defeats his equitable tolling claim. Moreover, once he did have the documents, even if it was late in August 2009, the record is utterly silent about Defendant's own efforts for the approximately next two months. *See Evidentiary Hearing Transcript* at 30-32.

   Defendant's fifth basis for equitable tolling reiterates the above:

> . . . [Defendant] acted as diligently as he possibly could, given his conditions of incarceration. He sought help from an inmate whom he thought knew what he was doing. He and his wife sought information and documents from Mr. Romero. The prison, the inmate librarian, Mr. Romero's office, Mr. Romero and Mr. Denny's own ignorance put substantial obstacles in his way.

*Doc. 23* at 34. For the reasons above, however, there are no credible and/or legally sufficient explanations for the lack of efforts Defendant made over the course of more than a year. None of the factors he relies on either individually or collectively establish the requisite diligence. Likewise, even if his assertions could establish "diligence" on the part of Defendant, the factors individually and collectively do not establish the requisite "extraordinary" circumstances.

   Defendant also argues that "Mr. Romero's neglect effectively deprived [him] of his right to counsel as well as his right to an appeal [thereby] obstructing [him] from filing a § 2255 [petition]." *Doc. 23* at 34-35. An attorney's conduct can be the basis for equitable tolling, but to do so it must go beyond "garden variety" negligence and rise to the level of "far more serious

instances of attorney misconduct" such as "an attorney's failure to satisfy professional standards of care" in a case where counsel's "failures seriously prejudiced a client who thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment and of his death sentence." *Holland v. Florida*, ___ S. Ct. ___, 2010 WL 2346549, at *12, 13 (June 14, 2010).  In *Holland*, while not deciding whether the facts amounted to extraordinary circumstances, the Supreme Court suggested that the "record facts" in that case

> may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect."  To be sure, Collins [the attorney appointed by the state within thirty seven days after the conviction and sentence becoming final on direct review, specifically for the purpose of representing the defendant in all state and federal death penalty postconviction proceedings] failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence.  But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so.  Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules.  Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information.  And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at *14.

There are two critical distinguishing features between this case and *Holland*.  First, *Holland* involved counsel appointed specifically to pursue state and federal habeas relief.  Defendant did not retain Mr. Romero to file a § 2255 petition, nor was he relying on Mr. Romero to prepare a § 2255 petition.  In fact, after learning that no appeal had been filed, Defendant sought out representation by other attorneys and his sole contact with Mr. Romero's office was to secure copies of documents for the inmate librarian he was relying on for help.  Given that

Mr. Romero was not acting as Defendant's attorney for § 2255 proceedings, nor did Defendant want him to do so, the fact that Mr. Romero did not advise Defendant about time constraints for the § 2255 petition in the summer of 2009 is not grounds for tolling either.

Second, and significantly, here, Mr. Romero's failure to file a notice of appeal had no effect on Defendant's *ability* to file a § 2255 motion – Defendant was always free to file a § 2255 motion in federal court. In contrast, in *Holland*, the state court would not allow the Defendant to act on his own behalf:

> our prior cases make it abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling. In *Lawrence* [*v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007)], the Court expressly rejected the petitioner's contention that "his counsel's mistake in miscalculating the limitations period entitle[d] him to equitable tolling." "Attorney miscalculation," the Court held, "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." . . .
>
> The basic rationale for *Lawrence*'s holding is that the mistakes of counsel are constructively attributable to the client, at least in the postconviction context.
>
> \* \* \* \* \*
>
> Although attorney negligence . . . does not provide a basis for equitable tolling, the AEDPA statute of limitations may be tolled if the missed deadline results from attorney misconduct that is not constructively attributable to the petitioner. In this case, petitioner alleges facts that amount to such misconduct. . . . [H]e alleges that his attorney essentially "abandoned" him, as evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years. . . . Petitioner also appears to allege that he made reasonable efforts to terminate counsel due to his inadequate representation and to proceed pro se, and that such efforts were successfully opposed by the State on the perverse ground that petitioner failed to act through appointed counsel. . . .
>
> If true, petitioner's allegations would suffice to establish

>   extraordinary circumstances beyond his control. Common sense
>   dictates that a litigant cannot be held constructively responsible for
>   the conduct of an attorney who is not operating as his agent in any
>   meaningful sense of that word. . . . That is particularly so if the
>   litigant's reasonable efforts to terminate the attorney's
>   representation have been thwarted by forces wholly beyond the
>   petitioner's control. The Court of Appeals apparently did not
>   consider petitioner's abandonment argument or assess whether the
>   State improperly prevented petitioner from either obtaining new
>   representation or assuming the responsibility of representing
>   himself. Accordingly, I agree with the majority that the
>   appropriate disposition is to reverse and remand so that the lower
>   courts may apply the correct standard to the facts alleged here.

*Id.* at \*\*16-18 (Justice Alito, concurring in part and concurring in the judgment).

Finally, Defendant asserts that he is "actually innocent" of his "sentence" because the district judge "refused to impose a lower sentence based on the 'constraints' of Tenth Circuit case law." *Doc. 23* at 35. To the extent that sentencing issues can qualify as "actual innocence," at most, this is "legal" and not "factual" innocence. Therefore, it is not grounds to excuse the untimeliness of his petition. *E.g., Gabaldon*, 522 F.3d at 1124 n. 2 ("Actual (factual) innocence is a ground for applying equitable tolling. *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). As the district court recognized, however, Mr. Gabaldon's arguments implicate legal innocence, not factual innocence.").

On a final note, a careful review of the sentencing transcript reveals that the 240-month sentence was first suggested early on by Judge Parker as the appropriate sentence in this case and that he was unpersuaded that a lesser sentence would serve the goal of deterrence given Denny's age at the time of sentencing. *Doc. 129* at 12 in CR 04-0666 ("Mr . Romero has argued for a sentence of the mandatory minimum term of 120 months, but I had more in mind a sentence of 240 months, which is a 20-year sentence. . . . given his age now of 37, and the age he'll be when he would serve a 20-year sentence, which would be around the middle 50s, I think

by then he will have matured enough to give up this pattern of conduct."). Thus, it is not at all clear that he would have imposed a lesser sentence had the newer case law been applicable at the time.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2255 motion be dismissed as untimely.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE